UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ISO DEVELOPERS, INC. D/B/A/ISODOCS | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | Civil Action No.: |
| | * | |
| ROBERT ERRATO AND UNITE SOCIAL, LLC, | * | |
| Defendants. | * | |
| | * | |

## COMPLAINT AND JURY DEMAND

In this action for breach of contract, fraudulent conveyance, detrimental reliance, and fraud, the Plaintiff, ISO Developers, Inc. d/b/a/ISODOCS ("ISO"), a website and mobile applications developer, seeks payment of fees and expenses incurred by Robert Errato and Unite.Social LLC pursuant to contracts between ISO and Errato for development of the Unite.Social application. In addition to payment of the fees and expenses owed, ISO seeks multiple damages, attorney's fees and costs for Unfair and Deceptive Trade Practices pursuant to Mass.Gen.Laws Chapter 93A.

### Parties

1.      The Plaintiff ISO Doc, Inc., d/b/a ISO Developers, (hereinafter referred to as "ISO"), is a New York Corporation registered and doing business as ISO Developers in the by the Commonwealth of Massachusetts with a principle place of business at 354 Main Street, Winthrop, Massachusetts 02152.

2.      The defendant Robert Errato ("Errato") is a citizen of the State of Connecticut who resides at 3490 Whitney Avenue, Hamden, Connecticut 06518. At all times relevant hereto, Errato engaged ISO to develop a mobile application known as Unite.Social. ("Unite.Social

Application") Errato was also an agent of a Delaware limited liability corporation Unite Social, LLC formed on March 15, 2016.

3.  Unite Social LLC, ("Unite Social Company") is a Delaware limited liability corporation formed on or about March 15, 2016. Unite Social Company, through one of its members, Stephen Errato, has asserted a claim of ownership over the Unite.Social Application. The members of the Unite Social Company are Robert Errato's sons, Chistopher, Stephen and a third son who is unidentified.

## Jurisdiction

4.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because the action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.

5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(1), insofar as ISO's principal place of business is in this judicial district and the Defendants have continuously transacted business here. Alternatively, venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2), insofar as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

6.  The Plaintiff requests that this Court accept pendent jurisdiction over the state law claims. The state and federal claims derive from a common nucleus of operative facts, and the claims are such that they would ordinarily be expected to be tried in one judicial proceeding.

## Facts

7.  The plaintiff ISO provides digital development and design of websites and mobile applications to a broad client base including individuals and corporations.

8. Commencing on or about the fall of 2014 and continuing through the fall of 2016, Errato contracted and agreed with the plaintiff ISO to develop and design a mobile application and website called Unite.Social, formerly identified as "Gather," that combined all social media applications into one location for simpler access and functionality.

9. With the knowledge and agreement of Errato and the Unite Social Company, ISO retained the services of in house and third party administrative, support and development staff to assist in the development the Unite.Social application. ("Third Party Vendors").

10. ISO, Errato individually, and Errato as an agent for the Unite Social Company, entered into an agreement(s) whereby ISO contracted with the third party vendors in exchange for Errato's agreement to pay the invoices for services rendered by the vendors plus an agreed upon mark-up. Under the terms of the agreement between ISO and Errato, Errato was to make the payments either to ISO or directly to the third party vendors.

11. In reliance upon Errato's agreement as above described, ISO contracted with and incurred fees and expenses for services rendered by the third party vendors.

12. Although Errato did make some payments either directly to the third party vendor(s) or to ISO on invoices generated for the work completed on the Unite.Social application, his payments were sporadic and, as the project grew as a result of Errato's almost constant demands for changes and enhancements, his unpaid balance with ISO and ISO's corresponding unpaid balance with the Third Party Vendors also grew.

13. As the unpaid balance Errato owed to ISO continued to mount, he engaged in a number of schemes to inveigle, entice and coerce ISO to continue to perform development services on the Unite.Social application without paying for those services.

14. While the Unite.Social Application was under development, Errato began to experience marital problems that resulted in the filing of divorce proceedings in Connecticut.

15. As Errato's efforts to resolve the divorce amicably failed he attempted to involve ISO in his efforts to conceal the Unite.Social application and his payments for services rendered in connection with the design and development of the application from his estranged wife, her attorney, and the court in which the divorce is pending.  For example in various email correspondence and text messages involving Mr. Errato and his divorce he wrote the following:

   a. "…I can't afford to have this get very ugly because one thing leads to another and if she picks up on hottie body it will potentially lead to unite into two other projects I am working on with other partners in the real estate world."

   b. "Dave I searched high and low for my hottie body file I cannot locate it because I hide it from my wife…"

   c. "…can't commit to the even 8000 at the moment as you know my divorce is out of control and each time I'm in court I'm under more scrutiny.  If the 8000 could be pushed out until 9 April I then I can put it on the new card I acquired . . ."

   d. "Still getting my blood sucked preparing for an unexpected motion filed by my whore."

16. As Errato continued to incur charges for development of the Unite.Social Application, he continued to use his pending divorce proceedings to avoid and/or delay payment to ISO and/or the third party vendors. This was a tactic that was consistent with his expressed efforts to defraud his wife.

17. Errato repeatedly represented that payment was delayed due to the divorce and that once certain issues were resolved and/or the divorce case was final he would make full payment.  Errato represented that, once his divorce was completed, he would have access to the funds needed to pay ISO.

4

18. ISO's agreement with Errato was never contingent upon the satisfactory resolution of Errato's divorce and ISO never agreed to defer payment of the outstanding balance owed until Errato resolved his divorce related issues.

19. Apart from the pending divorce proceedings, Errato also used false promises of large sums of anticipated investment capital to persuade ISO to continue to render development services barring no expense.  During the course of the project, Errato represented that he had investors some of whom could provide 3.5 million in funding for the project and told ISO employees and representatives in a video conference call that he had Two Million ($2,000,000.00) Dollars, it was coming ISO's way and everyone should continue to work on design and development.  Errato never paid the Two Million ($2,000,000.00) Dollars promised and those investors never materialized.

20. Errato also identified a certain attorney as a partner and investor in the project and requested that ISO forward information on the design and development of the projects to that attorney.  ISO complied only to learn directly from the attorney that he was neither a partner nor an investor.

21. In reliance on Errato's false promises of payment, he requested and ISO assisted him in meeting his financial obligations until the promised funding was available and even complied when Errato insisted that ISO test the hardware developed for the project at various concerts, events, and businesses despite the fact that the testing was unnecessary.

22. While on numerous occasions Errato applauded and complimented ISO on the development and design of the project, at other times, particularly when ISO was forced to halt the project because of the large outstanding balance or when a demand for payment was made, he would become threatening, vicious, and verbally abusive.

23. On those and other occasions, such as when Errato was facing a contempt hearing in his divorce case, Errato would falsely accuse ISO or the developers engaged in the project with various acts of wrongdoing all in an effort, at times successful, to obtain a credit against the balance owed or to extort ISO to continue development of the Unite.Social application without remuneration.

24. He has also falsely accused a developer of using his credit card without permission after he authorized the use of the card against credits in kind for services rendered as he felt this would work better for him.

25. For example, when in June 2015, he was informed that his projects had been placed on hold and would not be released unless and until he paid the outstanding balance on his account, Errato responded by claiming fraud in connection with certain charges to his AMEX account.

26. When this ploy failed because he had authorized the charges and the credits to his account he made a payment toward the balance and the work on his project continued. The following are a few examples of emails documenting this arrangement:

    a.    In one email he wrote:

> Dave,
>
> Please be sure at some point to email me the license transfer and a note that we agreed to have you charge my credit card for $200-250. For a purchase you are making at Home Depot for you personal needs, in return for the Apple developer license.
>
> Just want to include this into my notes to my partner.
>
> \*\*\*
> Thanks.
>
> Bob

6

b.  Credit: 0000003 dated November 18, 2014 in the amount of $3,166.07 listed the charges made to Mr. Errato's credit card and crediting his project development account for those charges.

27. After considering various options to hide his assets from his estranged wife, Errato decided to use his sons to form the Unite Social Company.

28. The plaintiff has never seen any corporate letterhead, business cards, envelopes, stationary, or contact information, including an email address connected with Unite Social, LLC.

29. Unite Social, LLC does not appear to serve any legitimate business function. The Unite Social Company appears to have been formed in his sons' names as a front to shield what Errato perceives to be a valuable asset from both the receivables owed to ISO and from his estranged wife.

30. When Errato ran out of excuses for his failure to pay ISO for the development services rendered, Errato's sons, at Errato's urging, engaged in an elaborate but transparent scheme to attempt to obtain access to the code for the creation of Unite.Social from ISO under the guise of conducting an audit of the application.

31. When the ruse failed Errato responded with an attempt to recapture credit card payments previously made by submitting fraudulent charge backs on payments made months earlier.

32. Specifically, Errato filed a series of fraudulent disputes or credit card charge backs totaling approximately $150,000.00 against ISO notwithstanding the fact that on a number of occasions, including in March 2016, Errato agreed both verbally and in writing that invoices rendered by ISO and payments he charged to his American Express Account on those invoices were fully authorized, good and valid and notwithstanding the fact that he had accepted the development and support services represented by those invoices.

33. Errato knew or should have known that the fraudulent disputes/ chargebacks would cause severe hardship to ISO and would hamper the company's ability to accept credit card payments from its customers.

34. In a number of email communications authored by Errato he explained that his son Stephen had complained to the Federal Bureau of Investigation and intended to file the paperwork with the Federal authorities in Boston on a claim against an employee and ISO.

35. Errato and his son, Stephen Errato knew that a complaint against the employee could jeopardize the employee's freedom.

36. Thereafter, believing he had leverage against ISO by his threat to pursue criminal complaints, Errato made unreasonable and outrageous demands from ISO including repayment of funds forwarded, the surrender of all equipment purchased in consideration of the credit given for the value of that equipment, and to what amounts to an admission of guilt by ISO and waiver of civil liability, among other things.

37. Currently, the defendants owe ISO in excess of Two Million ($2,000,000.00) Dollars in development and design costs as well as a promised equity position in Unite.Social, exit penalties and fees associated with breach of the agreements with ISO.

## Count I
## Breach of Contract
## ISO v. Robert Errato

38. The plaintiff incorporates by reference paragraphs number one through 37 as if fully set forth herein.

39. Errato entered into a contract(s) with ISO to provide design, development and support services in exchange for certain agreed upon fees, expenses and an equitable interest in Unite.Social.

40. The contracts were supported by good and valuable consideration.

41. ISO performed its obligations under the contracts with Errato.

42. Errato breached the contracts by failing to pay for the services rendered.

43. As a direct and proximate result of Errato's breach, ISO has suffered and will continue to suffer severe financial harm and loss, fees and costs.

### Count II
### Fraudulent Conveyance

44. The plaintiff incorporates by reference paragraphs number one through 43 as if fully set forth herein.

45. In an effort to accommodate Errato, ISO and Errato agreed that ISO would reduce its fees in exchange for a 5% interest in the Unite.Social Application.

46. On or about March 15, 2015, Errato transferred the Unite.Social Application to the Unite Social Company.  Errato did not disclose the transfer to ISO.

47. Errato formed Unite Social Company using his sons as its members, in order to hide the Unite.Social Application from his estranged wife and to evade his obligations to ISO.

48. At the time of the transfer, ISO Developers was a creditor of Errato.

49. The transfer of the Unite.Social Application to the Unite Social Company was made without adequate consideration.

50. Unite Social Company, through at least one of Errato's sons, has denied any liability to ISO.

51. The transfer was made in an effort to avoid ISO as a creditor and to divest ISO of its 5% equity interest in the Unite.Social application.

52.  Unite.Social LLC knew or should have known that Errato made the transfer to Unite.Social LLC in order to avoid his obligations to ISO.

53.     Errato was acting as an agent for Unite Social Company in connection with the transfer and in connection with development costs Errato continued to incur following the undisclosed transfer.

54.     As a direct and proximate result thereof, ISO has suffered financial loss and damages, attorneys fees and costs.

## Count III
## Unjust Enrichment- ISO v. Unite Social, LLC

55.     The plaintiff incorporates by reference paragraphs number one through 54 as if fully set forth herein.

56.     Unite Social LLC makes its claim of ownership of the Unite.Social application against the fundamental principles of justice or equity and good conscience.

57.     Unite Social LLC has been unjustly enriched at the expense of ISO.

58.     The acts and conduct of the defendants were malicious, intentional, and unlawful.

59.     As a direct and proximate result ISO suffered severe financial harm and loss.

## Count IV
## Detrimental Reliance
## ISO v. Robert Errato

60.     The plaintiff incorporates by reference paragraphs number one through 59 as if fully set forth herein.

61.     The aforementioned acts and conduct of Errato, including, but not limited to, promises to pay for development costs and promises of funding in the amounts of millions of dollars were false representations of material fact upon which the defendant Errato intended the plaintiffs rely.

62.     The defendant Robert Errato knew or should have known at the time they made theses representation they were false and the plaintiff would rely on them.

63. The plaintiff relied on these false representations to their detriment.

64. As a direct and proximate result ISO has suffered and will continue to suffer severe financial harm, loss and damages.

### Count V
### Civil Fraud

65. The plaintiff incorporates by reference paragraphs number one through 64 as if fully set forth herein.

66. The defendant Robert Errato made numerous false representations of fact as alleged herein.

67. The false representations of fact were made with knowledge of their falsity.

68. The false representations of fact were made for the purpose of inducing the plaintiff to act thereon.

69. The Plaintiff ISO relied upon the representation as true.

70. The Plaintiff ISO acted upon the false representations of fact its to his detriment.

71. As a direct and proximate result thereof, the Plaintiff ISO Developers, Inc, d/b/a/ ISODOC has suffered and will continue to suffer financial harm, fees and costs.

### Count VI
### Mass.Gen.L. 93A- Unfair and Deceptive Trade Practices
### ISO v. Robert Errato and Unite Social LLC

72. The plaintiff incorporates by reference paragraphs number one through 71 as if fully set forth herein

73. The aforementioned acts and conduct of the defendants occurred substantially and primarily within the Commonwealth of Massachusetts.

74. The aforementioned acts and conduct of the defendants were unfair and deceptive and violated G.L. c. 93A, §11 et seq.

75. The aforementioned acts and conduct of the defendants were egregious and outrageous.

76. As a direct and proximate result ISO suffered severe financial harm and loss and is jeopardy of failing to meet its obligations and of dissolution, bankruptcy, and collection activity.

### Prayers for Relief

1. That the defendants be required to post a bond in the amount of Three Million ($3,000,000.00) Dollars to secure judgment.

2. That judgment enter in favor of the Plaintiff on all Counts of the within Complaint.

3. That the court enter an order for treble damages, attorneys fees and costs on Count VI of the Complaint.

4. The Court issue an order preventing and precluding the defendants' use of any development, design, or code either in their possession or that may come into their possession during the pendency of this action with other developers or for any use whatsoever other than in connection with this litigation.

5. Any and all other relief this Court should allow in pursuit of judgment.

THE PLAINTIFF DEMANDS A JURY TRIAL OF ALL COUNTS SO TRIABLE.

Respectfully Submitted,
Plaintiff,
By its Counsel,

/s/ *Juliane Balliro*
Juliane Balliro (BBO# 028010)
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 573-4713

Dated:  November 29, 2016